and others. Arguments not to exceed 15 minutes per side. Mr. Sims for the appellant. May it please the court, your honors, Ms. Parson. My name is Greg Sims. I represent Charlie Jean Lilly in this case. The finding of summary judgment against Charlie Lilly should be reversed in this case because the trial court refused to take the facts in the light most favorable to the non-moving party, Ms. Lilly, and the police cannot hide behind a shield of a warrant when they intentionally provided false statements and intentionally omitted material evidence in order to obtain that warrant. Now before we talk about warrant in this case and probable cause, I'd like to take a brief moment to talk about some of the facts that the trial court did not take in the light most favorable to Ms. Lilly. First, we provided evidence that Dr. Hall, Ms. Lilly's psychiatrist, had advised the police a month before they applied for this warrant that the way she answered questions subsequent to her rape could be taken into account by disassociation due to the history of trauma. That's the only evidence we have in the record of what those inconsistent statements could mean. They didn't seek another source, another expert, another doctor. But that was in the record. The trial court refused to take that as a sign of dissociation from trauma and instead took their assertion that that meant she fabricated the rape. But isn't the police could reasonably take that into account and the other things into account in finding probable cause? The issue is not whether she did it or not. The issue is whether the police had probable cause. Is that right? Well, to a degree it's correct. To what degree is that not correct? Well, the elements that they have to show for probable cause for a violation of KRS 519-040, which is falsely reporting an incident, are twofold. They have to show probable cause that a rape did not occur and that she alleged that it did. They provided no evidence at all that the rape didn't occur. What they provided was evidence of what they thought were inconsistent statements that bore on her credibility. They didn't provide any evidence that a rape did not occur. If there's evidence that she said things that were inconsistent with a rape occurring, why isn't that evidence that a rape didn't occur? Because of exactly what Dr. Hall said. Because on July 12, 2010... Before you get into what he said, I'm curious. If there's five pieces of evidence that say that crime was committed and a couple of pieces of evidence that say it wasn't committed, isn't that enough for probable cause even if the evidence that says it wasn't committed has some weight and can be read? I think that you're right. It needs to be weighed and I think you're correct. The problem is they didn't have any evidence that it wasn't committed. They're saying they had some inconsistent statements. Maybe we need to talk a little bit about the inconsistent statements that they allege in order to find out how they could reasonably... The only evidence that it was committed is the testimony or the allegations of the victim. And there are all kinds of ways in which it looks like she wasn't telling the truth. Why isn't that the case? I'm with you. But she had injuries. And let's treat that. I mean there's all these things which undercut her story and make it look like it wasn't the case. Well, let's talk about those. Their first point is that she didn't move. She looked like she could have got out of these restraints when she's tied to the bed. 911 told her not to move. They take this as evidence that she fabricated rape because she looked like she could have got up but she didn't. And 911 told her not to move. 911 didn't tell her not to move before she called 911. Well, I mean that's assuming that she could have gotten out before she called 911. There's some evidence that she could have gotten out before she called 911. Which the court did not... Which is that these things are loose. I mean maybe that's not true or maybe she thought she needed to stay in them for some reason. But all we're talking about is probable cause here, right? Well, I think now we're talking about questions of fact. Which the trial court should have resolved in the light most favorable to Ms. did not get up and she looked like she could have got out of these restraints means she fabricated the rape. However, the trial court... That means that the police could reasonably believe that she fabricated the rape. When you look at the totality of the circumstances here for probable cause of what they could reasonably believe, I asked the court to take into account a few other things. They have physical evidence before them. That is evidence corroborating her story that there was a rape. And the police agree that the physical evidence is the most important. She's got marks on her neck. She's got a bump on her head and she's got marks on her legs consistent with her story and they don't even deny that. They've got physical evidence where they took a rape kit and they put in the warrant that they had done the full investigation knowing that that was still pending. Subsequently they called KSP and said stop testing the semen because we don't want to know who it is. But keep testing her blood because we want to know if she's got any substance in her system that we could use against her. They intentionally hid potential exculpatory evidence on Ms. Lilley and you can't do that. None of the case law says you can do that. When they wrote out this application for a warrant, they knew they had that physical evidence. They intentionally omitted that material evidence for the trier of fact in order to obtain that warrant. Those are the type of things that a judge would want to know about. And that's the definition of material. What is this evidence they had that they hid from the judge? Several things. A month before they talked to the judge, they sought the advice of a physician, a psychiatrist, about these inconsistent statements. They wanted to know what they meant. So that's the first thing that they hid. They also hid the fact that they had a rape kit, physical that was pending. They said they had done a full investigation. It was complete and based on their investigation, they knew she had fabricated the rape. They didn't even have that evidence back. The rape kit remained in suspension because they asked her to provide a sample of semen from her boyfriend because she had told them that they had had sexual relations that morning and she never produced it. And apparently they asked her about it a couple of times and it didn't appear. To clarify on that, they asked her, their story is that she was uncooperative in obtaining a semen sample from her boyfriend. What really happened and what they agree is that on the day of, they asked her where her boyfriend was and she said he was out of town, which he was. Then they said she never followed back up with us and they called that uncooperative. Well they asked for a semen sample, right? If you can't produce it that day, you can produce it the next day. It's my understanding they asked where her boyfriend was intending to get a semen sample. I'm not sure they told her we need a semen sample from your boyfriend, can you help us get it? Okay, well we'll look at the record. So, and I would disagree with the assertion that the KSP lab tested her and was suspended because they were trying to get a semen sample from her boyfriend. The KSP lab testing went on, they did find the presence of semen and once they were told this, Captain Gilpin and Claire, they told KSP lab to discontinue any further testing on the semen, but please continue testing her blood. And we have ample evidence of that in the record when we deposed KSP lab. They came in and told, they said that's exactly why we discontinued testing, it's because the officers in this case told us not to. Counsel, I want to go back to the sort of beginning because it seems to me that the issue that we're confronting here is whether or not the officers had probable cause for the arrest and charge. That's what brings us here, correct? And aren't we to look at, as they did, the totality of the facts and circumstances, not one action, not one piece of evidence, but the range of things that went into their calculus of determining whether or not they believed that this had occurred and whether or not that belief was reasonable and rational on the circumstances. And it was not just, it was not just the failure to cooperate with respect to the semen sample, but they looked at other physical evidence around the room, the looseness of the ties, the inconsistency regarding the door lock or whatever when the officers came in, the condition of the bathroom, the folded towels, and whether there was any evidence of struggle. They looked at a whole range of things and those things went into that calculus. And so isn't our query really whether or not the investigatory techniques and results were reasonable to support their probable cause determination? I agree wholeheartedly. The problem is that they mischaracterized these statements as inconsistent and let's talk about the back door. For example, they found... Before you, let me ask you, are they required for a probable cause determination to be perfect in their procedure, in their analysis? They most certainly are not. The problem is we have police officers who start this investigation believing that over 90% of women who say they were raped are lying. That's on page 67 of Captain Gilpin's deposition. He starts his analysis going in, not trying to figure out what happened with the rape, he starts his investigation trying to figure out how can I show that this woman is lying. And he does that with, the back door is a perfect example. They say well both of the doors are locked. That's inconsistent. No it's not. The back door is locked from the inside. They agree that somebody could lock that and leave. Why would a rapist lock the door behind him going out? Why would he do that? I don't understand any of the mentality of rapists, Your Honor. I don't know why he hit her with a blender when she was in the shower. The shower testimony is not inconsistent either. I'll tell you what I don't understand. How did she know it was a glass blender if he hit her from behind and she was knocked out before she, and then ended up on the bed? How did she know that was a pitcher from a blender? I guess she assumed. My problem is that the trial court wants her statements to be perfect and is assuming that any inconsistency is because of fabrication, not because of trauma from the event. And in the light most favorable to the non-moving party, that's how the trial court has to resolve that. And they say that a towel is folded so that means she couldn't have been hit. That is consistent with her testimony. Her statement is, I was in the shower, they hit me in the head, I grabbed the shower curtain. She didn't say there was blood all over the walls, that everything was disheveled. What about the water though? They said there was no water found around the walls. They found a little bit of water at the shower head, but that was it. They found water on the shower head, they found water on the floor. They said they didn't find any water on the walls. They didn't provide any evidence that enough time had elapsed where that wouldn't be reasonable. I don't understand why they're saying that's inconsistent. There's water on the floor, obviously there was water. There was water on the floor of the bathtub, not the floor of the... My guess is they're trying to say that the shower wasn't on, and that's what I'm assuming, but I don't understand that since there's water on the floor. He was a very careful rapist. He not only locked the door behind him, but he turned the shower off. I don't know. My point is, in the light most favorable to the non-moving party, those statements are not consistent, and they agree that the shower curtain was half down, that it looked like somebody had yanked down the shower curtain, and that's all she said that there was in the scuffle. She got hit in the head and she pulled the shower curtain, and then they come in and they say, well, the towel's perfect, it's folded right. In order to believe that's inconsistent, you have to believe that somebody can't get hit in the head and there'd still be a well-folded towel in the room. What about the inconsistencies between the physical characteristics of the person, a small person and then a larger person? This is exactly what I'm talking about. That's not inconsistent at all. She didn't say a small person and then a larger person. What she said was a person of small stature, that they were only a few inches taller than me. Later on, she said, I think he was about 5'8". They want to take that as inconsistent. Our client is 5'4". That's absolutely consistent. He's a few inches taller than her, and he's of small stature. 5'8's not big. I'm 6'2". I see your time is up unless there are further questions. With your permission, I'll sit down. Thank you. Please proceed. May it please the court, counsel. I'm Claire Parsons, and I represent defendants, appellees, Detective Kimberly Clair, and Lieutenant Kevin Gilpin. Appellees respectfully request that the court affirm the decision of the district court granting summary judgment in their favor. The trial court correctly concluded that Detective was probable cause to support Ms. Lillie's arrest. We believe that that decision should be affirmed for three reasons. First of all, there was probable cause to support Ms. Lillie's arrest, and so as a matter of law, Ms. Lillie's Section 1983 claim fails. In addition to that, the district court did not get to this issue. They addressed the issue solely on the basis of qualified immunity and probable cause, but this was an arrest pursuant to a warrant, and plaintiff has not, appellant has not made a showing under Franks v. Delaware that she can attack that warrant. Finally, qualified immunity is also appropriate because appellant has not shown that Detective Clair or Lieutenant Gilpin violated the clearly established law. They've not made any showing under that aspect. Basically, it's the same as the first argument then, right? It is, and I think they tie in together, Judge. There is a factual aspect under Anderson v. Delaware. We have reasonably but mistakenly concluded that probable cause existed. Our position is that probable cause existed as a matter of law and we don't need to get there, but that's what the district court found. Well, if we find that there was probable cause, that the district court was correct on that basis, we don't get to qualified immunity, do we? I think that qualified immunity plays into it in terms of if you affirm what the district court did exactly, it would be on the basis of qualified immunity because what the district court said was that the officers had enough basis in the record to reasonably, even if mistakenly, conclude that probable cause existed. I think that analysis can be informed by the state of the law. If there were cases in the Sixth Circuit that showed that probable cause in this case could not reasonably exist, that might work for appellants, but they haven't made that showing. So I think that they kind of work together. That's not the basis. It's hard for me to see how if you lost on the first issue, we might have to get to qualified immunity. It's hard for me to see how if you win on the first issue, we need to talk about qualified immunity. If you conclude that probable cause. Maybe you should just talk about the first issue. We believe that probable cause did exist to arrest Ms. Lilly for filing a false report in violation of KRS 519-040. There are, as the panel has already indicated, it wasn't only one thing. There's not one critical fact that supports the probable cause analysis here. There's a multitude of facts. In total, the district court pointed out five different sets of facts that undermined Ms. Lilly's story of an alleged rape. Can you get to probable cause by simply discounting every argument or every argument that Ms. Lilly asserted piece of evidence that might support her story? Because counsel says that what the police did was they came in with a preconceived notion that X percentage of all alleged rapes, the victims are lying. And so they proceeded to operate on that preconceived notion and thereby discounting or stripping out everything that might have supported evidence of a rape. I understand your question, Judge. And I will say that officers cannot discount evidence that exculpates a criminal suspect. With that said, probable cause does not require them to eliminate all possibilities of innocence. That's not the standard. And the evidence here is not that the officers discounted exculpatory evidence, but they had sufficient inculpatory evidence to file this false arrest charge against Ms. Lilly. And a word on the testimony of Lieutenant Gilpin that... Yes. First of all, I'd like to remind the court that Lieutenant Gilpin was not the officer that swore the warrant. The lead detective and the person that swore the warrant and signed off on it was Detective Kimberly Clare. She was supervised by Lieutenant Gilpin, and he had some part in the investigation in terms of collecting physical evidence, and he did talk to a few witnesses. But he never was the one who interviewed Ms. Lilly. He did not have any discussions with the prosecutor. He had nothing to do with the exchange of the prosecutor, and he never talked to the judge. So there's that. In addition, what Lieutenant Gilpin actually said was that in his experience as an investigating officer, he had found that many of the women who alleged rape ended up recanting their stories. So he wasn't simply assuming they were liars. They, in fact, told him, based on his experience, that their stories were not true. And that's what his testimony was. So there's no intent on his part to mislead or deceive the court. There's no intent to ignore exculpatory evidence. What Lieutenant Gilpin and Detective Clare indicated in their testimony was that right away, they saw inconsistencies between the physical layout of the apartment, inconsistencies in Ms. Lilly's own story, and so it was glaring. So right away, yes, they did have doubts about the veracity of their story, but they continued to investigate for over a month and attempt to prove it. Yes, Judge? In the investigation, putting aside the inconsistencies, there was mention of Ms. Lilly's sort of cavalette attitude about some of the matters incident to the rape. Did that factor into at all the officer's assessment of facts that data did not occur? I'm not sure what you mean by that. Well, when she was describing the rapist, there were comments that were almost sort of cavalier. Well, I think one that was pretty glaring, and I don't know if it's cavalier, but Ms. Lilly, in talking to Detective Clare within hours after the alleged rape, said that the attacker did not want her to move or giggle, and she quickly corrected herself because she realized no one would ever be giggling in a situation like that. In addition, another comment like that was that Detective Clare legitimately, for evidentiary purposes, asked Ms. Lilly if the attacker had ejaculated during the rape, and Ms. Lilly said he did not have a happy ending, a slang term that's usually used in a comical context but would not ordinarily be one that you'd expect to rape victim. And those factors did weigh in on it, but I think that the most important and critical aspects were the physical condition of the apartment, that it just did not corroborate Ms. Lilly's story. And also, you know, one thing that Mr. Sims never even mentioned was that Ms. Lilly, not only was her statement inconsistent, not only was it contradicted by the physical layout of the apartment, Ms. Lilly wasn't even forthright with the officers about what her name was. A week before this alleged rape occurred, Ms. Lilly had applied for and obtained a name change. She was Leslie Wood. She changed her name to Charlie Jean Lilly, and yet, on July 9th, when she made that phone call, she told dispatch, my name is Leslie Wood. When the officers arrived, she said, my name is Leslie Wood. She went by the name Leslie Wood, and you can see this in Detective Kimberly Clare's investigation report. She went by the name Leslie Wood until August 3rd, a month later, and she never mentioned that her name had changed. And the mere fact that she was not even upright, forthright with the officers about a name certainly indicates an intent to mislead or confuse or fabricate this alleged rape. I would like to point out some of the specifics as to the physical layout of the apartment. Just to clarify some of the things that had been said, Mr. Sims, in response to a question, advised that there was water on the floor of the tub. I want to remind the court that Ms. Lilly advised Detective Clare and officers that she had run the shower for about five minutes, five to seven minutes. She says it ran for a few minutes, then she was in there for two minutes. That's a lot of water. You would expect more than a small amount of water to be found on the tub. Despite that, no water is found on the walls, no water is found on the shower head, and there was evidence that the officers investigated that thoroughly. Lieutenant Gilpin testified that he took toilet tissue around the bathroom to see if there was any water that he could find, but he didn't. He also didn't find it on the walls, and that's inconsistent with Ms. Lilly's story that she was attacked violently in the shower and dragged from the shower, and yet no water existed. There was also the towels folded neatly over the tub. None of the items were disturbed, and so there's to clarify that. I'd also like to point out, Mr. Sims has made an argument that the court has not taken the facts in the light most favorable to Ms. Lilly. I would posit that there really is no dispute of fact here, and the reason is that there's no dispute of fact as to what happened and what Ms. Lilly told the officers. We've got video recordings of the forced entry into the apartment, of the state of the apartment. We've got photographs. We've got audio recordings of Ms. Lilly's interview. You know, all the court needs to do is look at those different interviews, look at what she told dispatch, look at what she told Detective Clare, look at those photographs to see the inconsistencies. You don't have to construe it one way or the other. It's obvious, and that is why there is no dispute of fact here and summary judgment was appropriate. If I have no further questions from the court. Thank you, counsel. Rebuttal, counsel. Your Honor, I would ask the court, please, I concur, please look back over those statements and over that video when they first came in to the apartment. If you haven't seen that video yet, it is heinous. It is something out of a horror film and the way she screams, it is legitimate. The context where he said that over 90% of rape allegations were false come from the question, okay, estimate for me how many times you've dealt with someone who's fabricated an allegation of rape or sexual assault in your tenure with the police department. Answer, I would say 90, over 90. 90 to over 90% of the rape allegations we've been able to prove are false. Question and answer. That's not prejudice. I mean, he knows how many he's investigated. Maybe he's just had a run of false allegations. It shocks the conscience. Well, it shocks the conscience, but it's not. For someone, for a police officer to say that 90% of the time a woman says. What if he's had 10 and 9 of them were false? He's supposed to not say that? He's a captain and he's been with them for a long time. Alright, what if he's had 80 and 70 of them have been false? What's he supposed to say? I don't doubt that he's determined 80 of them were false. I'm confident he has determined that they were false. I'm confident he's determined over 90. He's just, I think that he is, I think there's a serious mental health issue. When you say that over 90% of women who say they were raped are liars, that shocks the conscience to me, and that's who we're dealing with. He said 90% of the people that he's dealt with, that's what he was asked. He says 90% of the rape allegations, they've been able to prove are false, which indicates his mentality. We try to prove that they're false. We've been able to prove they're false. They indicate that Gilpin's not on the warrant. That is not accurate. Captain Gilpin told Claire to get the warrant, and in addition, he is mentioned specifically in the warrant, and they refer to his report as a basis to get that warrant. I would ask the court to review that. We've got a situation where the police did not provide evidence in this application for a warrant. What they provided was argument, speculation based on their doubt of what she said. No evidence. They ignored the evidence, and they had the evidence. The evidence is the physical markings. The evidence is the fact that she's done this rape kit, and they chose to hide that when they did an application for a warrant. That is unacceptable. It is unacceptable, and at the very least, in the facts most favorable to the non-moving party, gets us past summary judgment. It's an issue for a jury, and we would ask for that opportunity. Thank you, Your Honor.